# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 22-cr-338 (DLF)** |
| **LESLIE GRAY** | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Leslie Gray to 18 months' imprisonment, 36 months' supervised release, $2,000 restitution, and mandatory special assessment of $100. The government's recommended sentence is the mid-point of the 15- to 21-month range anticipated by the parties in the guilty plea agreement and calculated by the United States Probation Office in the Presentence Investigation Report ("PSR").

## I.    INTRODUCTION

The defendant, Leslie Gray, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States

1

On January 6, Gray entered the Restricted Area of the Capitol Grounds, where she unleashed a constant barrage of profanity, name calling, and baseless accusations upon officers working to protect the Capitol. Along with the mob on the east side of the Capitol, Gray then pushed forward past manned barricades and into the Capitol Building. Once inside, Gray continued her unrelenting verbal assault on police officers, calling them traitors and communists, among other things. She claimed the Capitol Building was hers and pushed past police officers who were trying to secure the building. Gray only left when she was physically forced out of the building by a police officer after resisting his verbal commands to leave.

The government recommends that the Court sentence Gray to 18 months of incarceration, a sentence that reflects the gravity of Gray's conduct.

## II.      FACTUAL BACKGROUND

### A.      The January 6, 2021, Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF 46, for a short summary of the January 6, 2021, attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020, presidential election.

---

Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police ("USCP"). The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

**B.** **Gray's Role in the January 6, 2021 Attack on the Capitol**

Leslie Gray lives in St. Cloud, Florida. On January 2, 2021, Gray posted on Facebook: "Just a little rant here. The correct words are Not 'overturned', [sic] that word assumes that Biden was rightfully elected.......as he was not, the words are 'stop the coup d'e tat', [sic] the treason that began in 2016 is now going to END!!!" On January 3, 2021, Gray posted on Facebook: "There is a Rally in Washington DC on January 6th to 'STOP THE STEAL' for Congress & Senate to Cote against the Electors in the illegally voting states. … the 6th and DC is our countries stand against illegal voting… we are already here and still coming!"

On January 4, 2021, Gray left her home in Florida and traveled to Washington, D.C. with her friend Traci Isaacs, Isaac's partner, Luis Hallon, and Isaac's nephew, William Isaacs.

After arriving in Washington D.C., Gray proceeded to the Capitol on January 6, 2021, where she joined in the protest of Congress' certification of the Electoral College outside the East Front of the Capitol. Gray initially joined the crowd gathered at the perimeter of the East Front of the Capitol's restricted perimeter, which was barricaded and patrolled by police officers. Gray chanted and yelled at the officers who had barricaded the area. After about one hour of protests, Gray joined the mob in surging forward and advancing past the barricades and up to the steps on the East Front of the Capitol, ignoring United States Capitol Police ("USCP") who were ordering the mob to stop. Gray posted live-stream Facebook videos of her activity both around and inside the Capitol on January 6. In one video, Gray recorded her fellow rioters picking up and removing the police bike rack barricades placed by USCP to keep protestors out of the Restricted Area. *See* Image 1.



Image 1:*, rioters pushing a barricade back into police officers* (Screen shot from Ex A, timestamp 0:10-0:30)

Gray, along with other rioters, pushed forward while yelling "This is our house, motherfuckers! This is the 'peoples' house." *See* Ex. A at 0:20-0:26. Gray continued yelling at police officers, calling them "communists" and "pinky communists," and "sellouts." *See* Ex. A at 2:40; Ex. B at 0:44. Gray constantly rotated in and out of the front lines of the rioters at the East Front, continuously screamed at police, encouraged other rioters by yelling "push, push" (*see* Ex. A at 0:05-15) as rioters pushed bike rack barricades against the police officers defending the Capitol and "we're taking it back" (*see* Ex. A at 2:07), and yelled things like "you are traitors to America. . . who have participated, who are complicit in a coup of the resident of the United States." *See* Ex. B at 3:15-30. Gray also narrates the mob's movements and actions, saying "I was right there, people, we pushed the gates. We got pushed back. . . . This is the people's house, it's getting taken back today." *See* Ex. A at 4:03. Gray continued yelling at police officers, asking them "Do you feel good defending communists, does it make you feel good. . . . Do you feel like you're

4

an American? 'Cause you're not, you're not an American, you're communists. . . . You are un-American, you are a traitor." *See* Ex. B at 1:20-1:53. As the rioters moved closer to the Capitol, Gray yelled "We're taking the house back now, we're taking the house back!" *See* Ex. C at 0:20.

Despite orders from the USCP to stop, Gray and other rioters continued to push forward toward the Capitol Building. As the crowd surged up the steps, Gray can be heard on her live-stream video yelling "Stop the steal!" and "Go! Go! Go! Get out of my damn way! Go! Go!" After reaching the top of the steps, Gray declared on her live-stream video, "this is what you want – this is what you got! We are up to the doors now… we are about to breach Congress." *See* Ex. C at 6:40-7:20; *see also* Image 2.



Image 2: "*Stop the steal!*" (Ex. C, timestamp 2:38-:42)

Police physically engaged with the crowd to prevent further surge outside the East Front of the Capitol, and Gray was among those who were tear gassed by Capitol police on the East Front steps, which caused her eyes to burn. *See* Ex. C at 7:20. Indeed, Gray says, "They're bombing us, they're throwing flash bombs on us. . . . but we're fighting, we're fighting for America." *See* Ex. C at 7:32-8:00. Explosions from crowd control devices, along with smoke,

can be heard and seen in Gray's videos. Gray also states that "We elected Donald James Trump

as the President. . . and we demand that he be installed on January 20th as the next president."

Despite the crowd control measures, Gray pushed forward, yelled "we're breaching the doors"

(*see* Ex. E at 0:39), and entered the Capitol at approximately 2:41 p.m. through the Columbus

Doors—which had been forced open by the rioters just two minutes earlier.[2]  *See* Image 3.



Image 3: *Gray, circled in red, after entering the Capitol*

Gray filmed herself entering the Capitol and then the Rotunda where she stated: "I am in

Congress. This is our house. This is our house! …I don't know what we are doing now but we are

in here. We've taken it. We've taken it. This is our house." Gray declared, "We have breached the

halls of Congress." *See* Ex. G at 0:40-1:10; *see also* Image 4.

---

[2]  The Columbus Doors, also called the Rotunda Doors or Rogers Doors, stand at the east entrance to the U.S. Capitol Building.  https://www.aoc.gov/explore-capitol-campus/art/columbus-doors. The Rotunda Doors were first opened by a rioter from the inside the Capitol at approximately 2:25 p.m. Rioters fought with police to keep the doors open, but police succeeded in closing them at approximately 2:28 p.m. Rioters then forced open the doors again at approximately 2:39 p.m. Gray records the seconds after the door was forced open in Ex. G.



Image 4: *Gray, circled in red, filming live-stream video in Statutory Hall*

While inside the Capitol, Gray repeatedly yelled "traitor" toward police officers before walking towards them. With alarms blaring audibly, Gray physically forced her way past police officers who were attempting to stop her from entering a corridor. As she defiantly pushed past officers, Gray yelled "step aside! I am going in… this is our house… I am coming in. Damn right I am coming in." *See* Images 5 and 6. *See also* Ex. H at 1:12-1:40.



Image 5: *Gray confronting a USCP officer attempting to stop her*



Image 6: *Gray pushing past an officer*

Approximately 15 minutes later, Gray was told by another officer to exit the Capitol. Gray refused, stating: "I am not going out. This is the people's house. I am not going out." The officer then told Gray he did not want to hit her with his baton, and Gray responded, "you are not going to hit me with a damn baton." After repeatedly refusing the officer's instructions to leave, the officer forcibly pushed Gray towards the exit. *See* Image 7.



Image 7: *Gray refusing to leave the Capitol* (Ex. J)

Seconds later, Gray records another live-stream video, calling the officer that pushed her a "domestic enem[y]." *See* Ex. K. After finally exiting the Capitol, Gray recorded yet another live-stream video on the Capitol steps, where she stated: "We stormed the Capitol today… This revolution that in earnest began today. We will take back our country from the communists… American patriots stormed the Capitol today. I am an American patriot. I stormed the Capitol today." *See* Ex. L; *see also* Image 8.



Image 8 (Ex. L)

### III.    THE CHARGES AND PLEA AGREEMENT

On October 12, 2022, a federal grand jury returned an eleven-count indictment charging Gray and Isaacs with various offenses. Gray was charged with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); Obstruction of an Official Proceeding and Aiding and Abetting,

in violation of 18 U.S.C. §§ 1512(c)(2) and2 (Count Three); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Five); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Seven); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Nine); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Eleven).[3]

On June 1, 2023 Gray was convicted of Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) based on a guilty plea entered pursuant to a plea agreement.[4]

## IV.    STATUTORY PENALTIES

Gray now faces sentencing on obstruction of an official proceeding, in violation of 18 U.S.C. §1512(c)(2).

As noted by the plea agreement and the Presentence Report issued by the U.S. Probation

---

[3] Traci Isaacs was charged with the identical offenses in Counts Two, Four, Six, Eight, and Ten, except that unlike Gray, Isaacs was not charged with Civil Disorder in violation of 18 U.S.C. § 231(a)(3). On April 21, 2023, Traci Isaacs pleaded guilty to violating 18 U.S.C. §§ 1512(c)(1) and 2 (Count Two). Sentencing is scheduled for November 8, 2023.

[4] On June 16, 2022, the government charged Hallon by Information with Entering and Remaining in a Restricted Building or Grounds, and Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. §§ 1752(a)(1) and (a)(2), and Disorderly Conduct in a Capitol Building and Parading, Demonstrating or Picketing in a Capitol Building, in violation of 40 U.S.C. §§ 5104 (e)(2)(D) and (e)(2)(G).   On December 14, 2022, Hallon pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G). On April 26, 2023, this Court sentenced Hallon to 24 months' probation. *United States v. Luis Hallon,* 22-cr-217. The government charged William Isaacs with multiple felonies.   On March 20, 2023, a jury found William Isaacs guilty of seven counts, including conspiracy to obstruct an official proceeding in violation of 18 U.S.C. § 1512(k), and obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). On August 31, 2023, Judge Ahmit P. Mehta sentenced William Isaacs, who suffers from Autism Spectrum Disorder, to 60 months' probation. *United States v. William Isaacs,* 21-cr-0028.

Office, Gray faces up to 20 years of imprisonment, a term of supervised release of not more than

three years, a fine up to $250,000, and a mandatory special assessment of $100.

V.      THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings

by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49

(2007).

As set forth in the final PSR, the Guidelines analysis is as follows:

Count Two: 18 U.S.C. § 1512(c)(2)

| U.S.S.G. § 2J1.2(a) | Base Offense Level | 14 |
|---|---|---|
| U.S.S.G. § 2J1.2(b)(2) | Resulted in Substantial Interference[5] | +3 |
| | **Total** | **17** |

| **Total Offense Level** | | **17** |
|---|---|---|
| Acceptance of responsibility (U.S.S.G. §3E1.1) | | -3 |
| **Total Adjusted Offense Level:** | | **14** |

*See* Plea Agreement at ¶¶ 5(A).

The U.S. Probation Office calculated Gray's criminal history as category I, which is not

disputed. PSR ¶ 47. Accordingly, based on the government's calculation of Gray's total adjusted

offense level, after acceptance of responsibility, at 14, Gray's Guidelines imprisonment range is

---

[5] The term "substantial interference with the administration of justice" as defined in the commentary, "include[s] . . . the unnecessary expenditure of substantial governmental or court resources." *See* U.S.S.G. § 2J1.2(b)(2), Application Note 1. Gray admitted that she corruptly obstructed and impeded an official proceeding, namely the certification of the Electoral College vote count. The riot resulted in evacuations, vote count delays, officer injuries, and more than 2.9 million dollars in losses. As described herein, law enforcement from all over the D.C. metropolitan area responded to assist in protecting the Capitol from the rioters.

15-21 months' imprisonment. Her plea agreement contains an agreed-upon Guidelines range calculation that mirrors the calculation contained herein.

## VI.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a term of incarceration.

### A.     Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Gray's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Specifically, Gray charged with the mob through police barricades on the east side of the Capitol, then up the East Stairs and through the Columbus Doors. Gray then paraded around the Capitol Building, pushing past officers blocking her way, contributing to the obstruction of the certification process. Throughout Gray's hours around and in the Capitol, she repeatedly pushed past police while she constantly and consistently verbally accosted any law enforcement officer she saw, calling them communists, traitors, and complicit in an attempted coup. Despite numerous police officers instructing her to leave the Capitol building, Gray refused, leaving only when she was physically shoved out an exit by an officer. The nature and circumstances of Gray's offense are serious, and fully support the government's recommended sentence of 18 months' imprisonment.

### B.  The History and Characteristics of the Defendant

Gray has no criminal history points, a factor already accounted for by the guidelines. She has never had any mental or emotional health problems, and she reports no drug or alcohol use.

PSR ¶¶ 65, 66. She has supportive individuals in her life and attends church. Yet nothing in Gray's background made her think twice about pushing past police officers, invading the nation's Capitol with a mob of rioters, and refusing police commands to leave.

### C.    The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Gray's criminal conduct on January 6 was the epitome of disrespect for the law.

### D.    The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[6] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

#### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

First, that someone with no past criminal conduct would attempt to stop the certification of the electoral vote, and interfere with officers trying to secure the Capitol, shows Gray's complete disregard for the rule of law.   Second, although Gray has now accepted responsibility for her actions, her social media statements after being forcibly removed from the Capitol were those of

---

[6] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

a woman who believed the "revolution" began "in earnest" on January 6. Further, Gray struggled during her initial plea colloquy, denying that she intended to obstruct the certification. Instead, Gray attempted to minimize her behavior, saying she only wanted her voice to be heard. It was not until Gray's second plea hearing that she admitted to her intent to stop the certification. Gray has, to date, not expressed true remorse or regret for her actions. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

### E. The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national

sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.   Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."   So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of

the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[7]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[8]

Although the defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.   While no previously sentenced case contains the same balance of aggravating and mitigating factors present

---

[7] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[8] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Andrew Hernandez*, 21-cr-445 (CKK), the defendant, a 45-year-old former Marine, made his way close to the front of the crowd on the east side of the Capitol that was trying break into the building. Hernandez pushed past fallen barricades on the east side moments after they were downed by the mob. Despite hearing police commands to turn around and the deployment of crowd control measures, Hernandez continued up the stairs. At approximately 2:40 p.m., moments after the East Rotunda Doors were breached (and about a minute before Gray entered the Capitol), Hernandez entered the Capitol Building, pushing past police officers. Hernandez, along with other rioters, then immediately entered the Senate Gallery. While in the Senate Gallery, Hernandez yelled many things, including "Treason." Hernandez was in the Capitol for approximately eleven minutes before exiting back through the East Rotunda Doors on his own. Like Gray, Hernandez pled guilty to a single count of violating 18 U.S.C. §§ 1512(c)(2) and 2, and like Gray, Hernandez faced a Sentencing Guidelines range of 15 to 21 months' imprisonment. The Court sentenced the defendant to 18 months' imprisonment, 36 months' supervised release, and $2,000 in restitution. While unlike Hernandez, Gray was did not enter any sensitive spaces, Gray was in the Capitol for a slightly longer period of time, and she live-streamed her participation in the riot. Like Hernandez, Gray's conduct warrants a sentence within the guideline range.

In *United States v. Christine Priola,* 22-cr-242-TSC, Priola made her way to the Senate floor. While on the Senate floor, Priola spoke to an associate by telephone and encouraged that person to come inside either the Capitol building or the Senate Chamber, saying it was "now or

never." Sometime before January 13, 2021, Priola deleted from her cellular telephone photos, videos, chats, and messages regarding her activities on and around January 6. Priola's guidelines range was 15-21 months, and Judge Chutkin sentenced her to 15 months incarceration for her violation of Section 1512(c)(2). Like Priola, Gray's conduct warrants a sentence within the guidelines range.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[9] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Gray must pay $2,000 in restitution, which reflects in part the

---

[9] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property ... including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

role Gray's played in the riot on January 6.[10] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Gray's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 98.

Because the defendant in this case engaged in criminal conduct in tandem with hundreds of other defendants charged in other January 6 cases, and [his or her] criminal conduct was a "proximate cause" of the victims' losses if not a "cause in fact," the Court has discretion to apportion restitution and hold the defendant responsible for her individual contribution to the victims' total losses. *See Paroline v. United States*, 572 U.S. 434, 458 (2014) (holding that in aggregate causation cases, the sentencing court "should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses"). *See also United States v. Monzel*, 930 F.3d 470, 476-77, 485 (D.C. Cir. 2019) (affirming $7,500 in restitution toward more than a $3 million total loss, against a defendant who possessed a single pornographic image of the child victim; the restitution amount was reasonable even though the "government was unable to offer anything more than 'speculation' as to [the defendant's] individual causal contribution to [the victim's] harm"; the sentencing

---

[10] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

court was not required to "show[] every step of its homework," or generate a "formulaic computation," but simply make a "reasoned judgment."); *cf.* 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court … may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.").

More specifically, the Court should require Gray to pay $2,000 in restitution for his convictions on Count Three. This amount fairly reflects Gray's role in the offense and the damages resulting from his conduct. Moreover, in cases where the parties have entered into a guilty plea agreement, two thousand dollars has consistently been the agreed upon amount of restitution and the amount of restitution imposed by judges of this Court where the defendant was not directly and personally involved in damaging property. Accordingly, such a restitution order avoids sentencing disparity.

## VIII.   CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 18 months' imprisonment, 36 months' supervised release, $2,000 restitution, and mandatory special assessment of $100.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:    /s/ Kyle M. McWaters
Kyle M. McWaters
Assistant United States Attorney
D.C. Bar No. 241625
601 D Street NW
Washington, DC 20003
(202) 252-6983
kyle.mcwaters@usdoj.gov

21